OK, the next argued case is number 18, 1583, Wausau Orthopedic Incorporated against Sasso. Mr. Fleming. Good morning, Your Honor. May it please the court. Mark Fleming, together with Mindy Suter, on behalf of the Medtronic Appellants. There's no way to resolve this dispute without wrestling with substantial questions of patent validity and scope. And that is true for two independent reasons. First, the agreement itself provides that it has expired unless a patent has issued with valid claim coverage over particular medical devices. And second, Dr. Sasso's entire theory of liability and damages as pled and tried in state court necessarily depended on construing patent claims and determining whether they cover Medtronic devices. That's why at the trial or before the trial, there was a Markman hearing in state court, a claim construction order issued, there was expert testimony on claim coverage, and detailed jury instructions on patent law. So the scope of- So you're telling us that the litigation in the state court should just be ignored? Well, it is not relevant to this court's assessment of its own jurisdiction. That's certainly true, because this court has an independent obligation to assess its own jurisdiction under the gun factors. And whether a state court made determinations after this complaint was filed does not bear on that. And we think all of the gun factors are eminently satisfied, because patent issues are necessarily raised, and they're substantial. And I don't think there's any dispute as to factors two and four, once those two are resolved. And then the only question becomes, did the district court abuse its discretion in declining to exercise the jurisdiction that Congress has said is exclusive? And the fact that the state court proceeded after this complaint was filed to a trial that it had no jurisdiction to conduct does not change the fact that the district court had exclusive jurisdiction, and this court has exclusive appellate jurisdiction. Well, the state court could determine that a patent was issued, as a matter of fact. Isn't that true? Yes, it could determine that. But that is not the issue we rely on. The date of their expiration, as a matter of fact. The date of a patent's expiration? I suppose it could determine those things, yes, certainly. But that doesn't change whether the issue of the patent's scope and the patent's validity are substantial issues of patent law that under this court's decision. The state court found, I'm quoting from the state court, the amount of money to be paid under the agreement and the term depend on the issuance of patents and their expiration, not their validity. So that is the determination that was made in the summary judgment ruling after this decision, this declaratory judgment action was filed. So at the time this complaint was filed, which is the time at which this court determines not only the district court's jurisdiction, but also its own. That order had not been issued. Now, had the state court done what we think it should have done, which was dismiss the state court proceeding, because it lacked jurisdiction, that would never have come out. Besides, that issue was one of Tennessee law, not one of Indiana law. There's no requirement that federal courts defer to one state court's application of a different state's law. The Supreme Court told us that in Titus versus Wallach and Adam versus Sanger, which we cite. And also, a clearly erroneous determination, even if made under state law, is not preclusive if it would have the effect of depriving a federal court of jurisdiction. We cite a number of cases to that effect. And that sentence that Your Honor read does not even engage with, it was something drafted by Dr. Sasso's counsel, signed by the state judge. It has no analysis at all beyond the conclusion that Your Honor read. It does not address the key provision of the contract, which is section 7, which defines the term of the agreement. One would think in determining the term of the agreement, one would construe and engage with the provision that is entitled term. And that one clearly says that the contract has expired unless a patent with, quote, valid claim coverage, close quote, has issued and covers the Medtronic products. And the fact that the state court clearly, erroneously came to a determination as to whether the contract was enforceable or not does not prevent this court from making a fresh determination of its own jurisdiction, which we think it has to do. What is the present posture of the appeal from the state court judgment? Our opening brief is due later this month, Judge Shaw. OK. That is the posture. In the Indiana Court of Appeals. In the Indiana Court of Appeals. And then, is that the highest court of appeals? It is not. That's the intermediate court. The Supreme Court of Indiana is the highest state. I'm asking because the district court opinion here sort of said, well, I'm going to take a wait and see. We'll see what happens in the state court proceedings. And maybe this could all be reopened then. So we think under this court's decision in, I believe it's either capo or capo, we are not required to wait for a determination of the dispute among the parties by the only court that has jurisdiction of Congress David, which is the district court. Now, are the patent issues? Well, I mean, I can't ask you to say at this point because you haven't filed your brief yet. But I thought I didn't realize that the briefs hadn't been filed yet in that case. So we don't know exactly what issues are presented in the appeal. I mean, that's certainly true. There's nothing on the public record. I mean, I have an idea. We certainly plan to appeal the patent issues, certainly. And because that's what this case was all about. I mean, both before we filed our complaint in the district court and afterwards. Dr. Sasso, from his complaint first asserting the facet agreement on pages 166 and 167 of the appendix, makes plain that his whole theory of recovery is because he believes claims of the 313 and the 046 patents cover Medtronic products. He says that's what he's going to prove. You're urging us to find jurisdiction, correct? The court needs to find jurisdiction. If it doesn't, it has to transfer it to the Seventh Circuit. Now, that's what I was going to ask you. If we don't find jurisdiction, why would we transfer to the Seventh Circuit instead of just dismissing it? Well, if the court doesn't have jurisdiction, I mean, we have timely noticed an appeal. We have the right to some court of appeals review of the district court's dismissal of our declaratory judgment action. If we found we lacked jurisdiction because we applied the gun factors contrary to the way you would want us to do it, but assume one went through the gun factors and said no jurisdiction in the Federal Circuit because no patent issue, right? That's what we would be finding. I prefer to contemplate the situation where you agree with me. No, no, I understand. But we obviously have to look at all the parameters. Why would, what would there be for the Seventh Circuit to do then? I think the Seventh Circuit would have to assess its own jurisdiction. And as happened in the Zitronix case, they could well disagree with that. They would be able to independently determine whether they think the district court had jurisdiction and on what basis. But it would turn on a patent issue. We would have said there's no patent jurisdiction here. And as I looked at the DJ complaint, it appears that the whole focus was on patent issues. And if, I guess what I'm trying to get squared away in my own head is if respectfully we were to disagree with you and say there's no jurisdiction in our court, I'm wondering why the proper result wouldn't be just a dismissal as opposed to a transfer because I can't see what there would be for the Seventh Circuit to do. Maybe other side will have a different view on that. Yeah, no, I think the Seventh Circuit would still have to review the district court's decision under Wilton and Brilhart and whether there was a proper exercise of discretion. And that would include evaluating the district court's decision. I don't think it would be bound by this court's evaluation of the issue. It would no doubt take it into account. But I think it would be deciding the issue afresh. I don't think this court could, for instance, either affirm, it couldn't affirm the district court. If your honor concludes you don't  court. And I don't think it would be proper to dismiss because we have the right to have some kind of appellate review of the district court's decision. So with respect, I'm happy to go through the gun factors. I mean, I think it's clear, not least because of this court's decision in Jang, which I think is completely indistinguishable from this case, where you have a contract that makes the enforceability of the contract and the payability of royalties depend on patent claim coverage. That is a patent issue that is necessarily raised. And it is something that is substantial within the meaning of gun. In fact, and this is, I think, what distinguishes it from the Inspired Development case, which was decided recently. We put in on a 28-J letter earlier this week. The issues of federal patent law are necessary here. They weren't in Inspired Development. They weren't in NeuroRepair. But NeuroRepair specifically cited Jang as an example of a case where the patent issues were dispositive. And that's precisely what's going on here. That's how it was pled. And that's how it was tried. So we don't think there's actually any significant difference between this case and Jang. And so we'd respectfully submit that there is federal jurisdiction exclusive in the district court and exclusive appellate jurisdiction in this court. And that, we would also submit, resolves the question under Wilton and Brillhardt. Because neither Dr. Sasso nor the district court cited any case suggesting that it is remotely proper for a federal court to decline to hear a DJ action that's within its exclusive jurisdiction simply because there is a state that improperly exercised jurisdiction over the dispute. But that's what the district judge did here. The court assumed that it had jurisdiction, which means exclusive jurisdiction. And that meant the state court lacked jurisdiction. But the district court then refused to exercise that out of respect for what had then become a judgment. It wasn't at the time we filed the case, but it took months. And then by then, there had been a trial and then ultimately a judgment that by the district court's own assumption, there's a melony under both federal and Indiana law. And that's an abuse of discretion. Brillhardt and Wilton both involved state issues purely. And they said, however, that when a plaintiff asserts that the controversy can be fully adjudicated in state court, then the federal court needs to determine whether that's actually true. And of course, a state court cannot fully adjudicate a dispute that is within the exclusive jurisdiction of the federal courts. And as I said, Dr. Sasso hasn't cited. We haven't found any case, not one, where a court declined declaratory jurisdiction in favor of a state suit that fell within exclusive federal jurisdiction. The court made other errors as well, respectfully, which compounded it. The court misunderstood our authorities, thought that they were addressing only Colorado River abstention. To do, we identified them as such. Mr. Sasso, I just have one question. Of course. What if the appellate process in Indiana results in a win for you? Namely, the appellate court says the trial court in Indiana got the patent issues wrong. So you win on the patent issues in Indiana. Where does that leave things? I mean, I certainly hope that the courts of Indiana will eventually recognize that either we were correct on the merits or that the case didn't belong to Indiana in the first place. Because then you would have gotten a favorable decision from the state court system on the patent issues. Yes, I mean, we would welcome that, obviously. We were made to go through the trial. We litigated the trial in the belief we think correct, that we have paid all that Dr. Sasso was entitled to under the circumstances. So that eventually would moot the DJ action? Not entirely, I don't think. Because ultimately, the case as it went to trial in Indiana did not involve all of the claims at issue in the patents. It involved a subset of them. But ultimately, Dr. Sasso left a few of them go. So the DJ is broader in that sense, that it involves all of the patents. Dr. Sasso ultimately didn't try the 046 patent at all. That's part of our DJ complaint. So there would still be issues. Now, whether we would still continue to press them, I think, would depend on timing and that sort of thing. But the DJ covers the claims that were litigated in Indiana. But it also covers the rest of the patents as well. So I mean, what I'd just point out, we clearly cited to the district court cases under Wilton and Brillhardt. We cited Epling, UL, Carlin, Saber-Oxidation, which we've also cited to this court. The district court, I think, discarded those in the erroneous impression that they were Colorado River cases. They're not. And the district court also erroneously thought that there was no benefit to Medtronic from filing this complaint, unless the district court could somehow disturb the Indiana judgment. And of course, that's not our position. Obviously, we're appealing the Indiana judgment. We hope that that appellate process will take care of that. But we filed this case for a completely different reason, which is we want this dispute to be resolved. And we want it to be resolved by the court that has exclusive jurisdiction that Congress gave it. And under CAPA, we're entitled to have that now. We don't have to wait until the state appellate process plays out. Unless there are further questions, I would respectfully reserve the remainder of my time for rebuttal. We'll hear from the other side. We'll save your rebuttal. Thank you very much, Your Honor. Let's hear from Mr. M. Hart. May it please the court. Contrary to the claims of the appellant, Dr. Sasso could prevail on the claims of this mere lawsuit without mentioning the language of the issued patents at all. Christensen v. Colt Industries says that if on the face of a well-pleaded complaint, there are reasons completely unrelated to the provisions and purposes of the patent laws, why the plaintiff may or may not be entitled to relieve, then the claim does not arise under those laws. It goes on to state, a claim formed by alternative theories may not form the basis for 1338 jurisdiction unless patent law is essential to each of the theories. Here, the well-pleaded complaint could be proven without going to the language of the issued patent at all. This, at its core, is a contract dispute. Dr. Sasso created surgical instruments. He forced spine surgery on his own. He took those to Medtronic. He assigned all intellectual property, including know-how, surrounding the instruments to Medtronic in a detailed written agreement. I'm sorry to interrupt you, but I had a, and I know you're in the middle of something, I did have a question I wanted to ask. And it's the same question I asked Mr. Fleming, if I could. What if we determine that there was no jurisdiction for our court here? What would you say would be the correct remedy? Mr. Fleming suggests that we should transfer it to the Seventh Circuit. I was sort of thinking that, well, if we find no jurisdiction, what would there be for the Seventh Circuit to do? Wouldn't it just be a dismissal? Do you have a view on that? I believe that the court could and should simply dismiss this complaint. There is no. Without a transfer. Yeah, there is no underlying diversity jurisdiction that exists in most of the cases that come before this court that are then transferred back to a different court of appeals  by Judge Newman's panel. And because of that. What do you say could dismiss? Are you implying that we could also transfer? Well, I wish I knew jurisdiction as well as you all probably do, but they did say supplemental jurisdiction. It's true that the judge used Wilton Brilhart discretion to dismiss the complaint. But he did that without prejudice. And we've said in our brief, why are we even here when the complaint was simply dismissed without prejudice? And if there isn't any other jurisdiction diversity there, then to just dismiss it seems like an appropriate way to go and an appropriate relief for my client. And so we would say simply dismiss. Looking at the well-pleaded complaint, it would have to closely track the written agreement between the parties. This written agreement is at the appendix. It's an exhibit to the Third Amendment complaint and also at the appendix at 596. And in this agreement, he assigns his rights in an invention in exchange for royalties to be paid on a medical device using the invention. The invention is defined, and that's very important. It's any product, method, system, or system relating to a facet screw instrumentation and a headless facet screw fixation system as described in Schedule A. This is important. The parties defined the invention. They didn't leave it to patent laws to come up with what the invention was. Schedule A states facet screw instrumentation and a headless facet screw fixation system consisting of bone screws and associated instruments for installation thereof. There is no mention of a patent there either. The medical device at 597 is any device, article, system, apparatus, or product, including the invention. Again, no mention of any patent. The contract says any valid patent. Are you saying that in your view, and I'm thinking now of Christensen against Colt, that the state court would not have jurisdiction if, in fact, a fair interpretation of that contract was that the patent needed to be valid? I would still think that the state court would have jurisdiction that, and that is because the gun factors are four, that it's necessarily adjudicated and that it's actually disputed and it's substantial and there's not an upset of the balance between federal and state law. And here, even if the Indiana Court of Appeals reversed the validity summary judgment order that took out the valid claim coverage language that is the cornerstone, it's the mainstay of everything that they pleaded to the district court, even if they took that away, they could take it away and that agreement, that term part of the agreement, it doesn't just say valid claim coverage. It says that the agreement is to last until the last two expire of the intellectual property rights included in the agreement. A valid intellectual property. Well, the first part is simply on the expiration date of the patent, the first part of paragraph 7. And then it says, or if no patents issue with valid claim coverage, then seven years from the date of first sale of the medical device. Well, even that paragraph has payments being made for seven years after the sale of a medical device, which that's not raising a patent law issue either. But as it stands, the ruling has taken out completely their whole reason for filing this lawsuit about getting some ruling about valid claim coverage. Mr. Herman, let me ask you, we have to look at the four gun factors, correct? Yes. Now, we also have the fact here that there's been a verdict and a judgment in the state trial court in Indiana. Mr. Fleming has told us that it's now on appeal and his briefs are due to be filed shortly at the first appellate level. And then there's the second appellate level. How does that fact, in other words, the pending case in Indiana, play into the gun analysis? In other words, which of the gun factors does the consideration that we have litigation in Indiana play into? Do you understand my question? I believe that that goes to factor four. And what we have here is a company that used the Indiana court system to seek a dismissal because of subject matter jurisdiction and lost that ruling. So we fully and fairly litigated the issue before the state court. It was rejected, and now it's being appealed. And if the federal system steps in and takes that away from the state system, the state system has made a ruling. Both sides have litigated, and it's going up on appeal. And it would seem that to do that would be in violation or contrary to factor four. It's upsetting the balance. Yes. And so that has been done. And to do that, it's like they've lost in the state court, and that now has become a final judgment, and it is on appeal. And I think also that's relevant to the Wilton-Brilhard abstention factors that the district court judge looked at in saying, I'm going to dismiss this case without prejudice because it is going up on appeal. And many different things could happen on appeal that would moot everything about this declaratory judgment action that's been filed. Anyway, that's a reason for a district court to step back and say, I will assume without citing jurisdiction and dismiss. And again, in the arguments that I'm hearing about assuming jurisdiction, it's assuming, but they're ignoring that it's without deciding, that he didn't say that there was jurisdiction. He just used that to get to Wilton. It was an even if statement. Yeah, even if, right. And I think that this court, I cited cases in my brief where that's used a lot, that it's assuming without deciding is a way to get to other reasons for taking the action that the court does. And he can correct me if I'm wrong. Mr. Fleming said in an oral argument a few minutes ago, he said that, well, he'll correct me if I'm wrong on this, that even if we, meaning his client, Medtronic, prevails in the Indiana appeal process, that there's still, the case doesn't totally go away from his standpoint. There's still an open question. Do you remember him talking about that as to the validity of the 064 patent? But he said, you know, we maybe wouldn't pursue it. Do you have a comment on that? Do you remember what I'm talking about? I can't remember that exactly. But there are issues between the parties about these contracts. The Indiana Court of Appeals has, or the Indiana State Court has found both contracts enforceable and has awarded damages. That brings up other factors about continuing damages under these contracts. But that is all, with the Indiana Court of Appeals deciding these issues, then the parties will know whether or not it's a state law or federal law that decides the claim. But that's something that the Court of Appeals will be doing in the appellate process. So I'm trying to go through the language with you that there is no language in this agreement. And so only the length of the time of the patents, and that's the only thing, that how long they go is how long he's supposed to be paid for. So there are four issues. What is the medical device? What is the invention? Was he paid in accordance with 4B? And what are his damages? And proving that, there's no need to use the language of the issued patent to do that. Now, the patents did come up, and the patents were transferred to the company, and patent application was written. There was all sorts of evidence to determine what the invention was. Now, this analysis- When do these patents expire? In 17 days. Well, the 313 patent on November 23rd. Where does that take us? How much? The initial seven years has passed. Where do we stand in the number of years that are left? Yeah, well, 17 days are left on the 313 patent. It will expire November 23rd. 17 days? Days, yes. And so there are almost no more damages to accrue under the agreements anyway. But that's not the damages that will accrue in the future, right? It's the jury award of damages. Well, the jury award of damages through December 31 of 2017, I believe. There's no other data provided to the damages expert. And there also are two different agreements that were at trial before the trial court, and there were case-within-a-case patent-type issues in the Vertex dispute. And those were also decided by the state trial court. But Vertex is not before us. And Vertex is not before. This case was removed right when it was filed, and Judge Miller of the Northern District of Indiana looked at the gun factors and remanded it to the state court. And that included, that made the Vertex dispute something for the state court to consider. And in the- A more interesting question. I say that's going to be a much more interesting question if we ever see it. The Vertex one. And again, this is all going up to the Indiana Court of Appeals and the subject matter jurisdiction argument has already been made and fully briefed and going before the Court of Appeals. This analysis that I give you is the exact same analysis that Medtronic used when they filed a motion for summary judgment to limit the screws that could be considered, the implants that could be considered as the ones they'd already paid on. And if you go to the 932 of the appendix, that is their brief in support of a motion for summary judgment on this. And they are saying that they go through it and say, we're only paying on medical devices and medical devices are limited. And contrary to what they say in their reply brief, at the 1286 of the appendix is the judge's denial of their summary judgment order. And he finds ambiguity in the provisions that I've given to you, which I read those provisions and I think that there is ambiguity. He found that. And that's what was being tried in the state court, was what came out of his summary judgment order found at 1286 of the appendix. So all those things show that with a well-pleaded complaint. Aside as to 932. 932 is the brief. Where in the brief? And I think it's 949 is where that argument goes. And then at 1286 is his order on that. And so everyone is looking at this agreement saying that's how you analyze it. And so the essence of this dispute is, what is a medical device? And Dr. Sassler said that consistently throughout this case, that that's what's going on and that's what happened and that's how he could prevail without ever looking at the patents that he transferred. Now, of course, when a patent application is written on an invention, and the facts here are that he created the prototypes and he went to a patent attorney. And the patent attorney put together the pictures and the different things that the patent had described and wrote everything about a patent, then that is helpful along with lab notes and emails and everything else that goes into defining that ambiguous term medical device that had to be done for the state court trial to determine what the intent of the parties was. So now we have a verdict, too. And the verdict, it is simply a damages verdict. And in Indiana, general verdicts are given by juries. There are no special interrogatories and special verdicts as there is in federal court. So we have a number. And there haven't been any, no patent's been declared invalid or valid or infringed or not infringed. It's simply a damage amount. And it has no effect on the lay of the land in the patent system. It is simply a verdict establishing damages on two different contracts. And so I think when you look at the cases in Aronson, Uroplasty, they all are cases that come before this court that demonstrate that just because their patents are mentioned, there's not a rising under jurisdiction under the factors of gun. So, OK. OK. Thank you. Thank you. Mr. Brennan, you're the only one. Mr. Brennan. Thank you, Your Honor. One quick point and then three hopefully also quick points. First to Judge Wallach's question, on page three of the red brief, Dr. Sasso's counsel asks that the court either dismiss or transfer the case to the US Court of Appeals for the Seventh Circuit. So they certainly contemplate that the court may transfer. And we think if the court concludes there is no jurisdiction, that's the right answer. Three remaining points, if I may. First of all, with respect to the necessity of deciding the patent issues, if one looks at page 600 of the appendix, which is where you find section 7 governing the term of the agreement, it specifically says the agreement shall expire upon the last to expire of the patents included in the intellectual property rights or if no patent applications issue into a patent having valid claim coverage of the medical device than seven years. That's 600? 600, yes. And that's section 7 entitled the term of the agreement. There is no way to determine which of those contingencies applies, whether we're talking about life of patent royalties or seven years of royalties, without determining valid claim coverage. The fact that Dr. Sasso's counsel wrote an order and the state court judge signed it, giving absolutely no notice to this provision at all, does not change the fact that that is an issue that, and certainly as of the time when we filed this declaratory judgment complaint, which was before they even moved for summary judgment on this point, this is something that we think needs to be determined in order to resolve the dispute among the parties. And this court can decide it and must decide it in order to assess both its jurisdiction and the district court's jurisdiction. The second point, Mr. Amhart said, the patents did come up. Respectfully, that is the understatement of the century. In the complaint on page 166 and 167, I beg your pardon? Are you alleging some impropriety? Not in the least, Your Honor. I'm alleging disagreement. Trial courts, all the time, when I practiced, it was routine that they would say prepare an order. And then they'd prepare an order. And then they'd review it, look at the findings, bad conclusions, and so on. And they'd sign it or modify it as they thought fit. But just because counsel prepared the order and the court signed it doesn't mean that the court is wrong. No, no, I don't mean to suggest. I'm sorry, Judge Locke. I do not mean to suggest impropriety. The point is there was no analysis at this point. And so there's nothing for this court to defer to, to the extent Dr. Sasso's counsel is suggesting that there needs to be deference to that construction of the contract. Mr. Foley, what about the fact that, and I discussed this with Mr. Amhart a little bit, that we have this state court process in full bloom, so to speak. Where do you think that plays into the gun analysis? He says it's a significant point with respect to factor four of gun. What is your response to that? I don't think it is, Judge Schall, because I think the determination of the gun factors has to do with what is on the face of the well-pleaded complaint. Does it necessarily raise patent issues? Of course it does. Are they substantial? Yes, they are, for the same reason as they were in Jang. Are they disputed? Of course they were. We had a full trial about them in the wrong court, but there was a full trial about them. And then finally, would exercising federal jurisdiction upset the federal state balance? And that has weighed against situations where you have, for instance, a Florida court deciding issues of Florida law construing a Florida contract. But here you have a Tennessee contract being adjudicated by an Indiana court. There's no reason to defer to that. The federal district court can construe a Tennessee contract just as well as the Indiana court can. Is that Indiana conflicts of law determination? The contract specifically specifies Tennessee law, and that was not disputed. The jury was instructed on Tennessee law. That's how this contract is construed. With respect, by the way, to the way that the patent issues permeated this case from the very beginning, I would urge the court to look at page 166 of the appendix, paragraph 67. This is the complaint that has the facet allegations in it. Quote, Medtronic through an acquisition now manufactures and sells Trifon Anchor FS, which product and method is covered by several claims of the screw delivery patents. Same page, paragraph 70. Patent numbers 313 and 046 describe in the summary of invention and have claims that cover a screw delivery system at the heart of different Medtronic products. Next page, 167, paragraph 71. Patent numbers 313 and 046 describe and have other than the facet screw products for which Medtronic paid royalties. Those are the allegations at the beginning of this claim, and it only continued from there. He answered contention interrogatories at page 762 that the contract was intended to provide me royalties, quote, for Medtronic products covered by any patents issuing from the intellectual property developed. The reply brief in the district court, 1839, said he would prove his case, quote, by showing patent coverage. His opposition to our motion to dismiss in state court, 1187, Dr. Sasso intends to show that those patents cover Medtronic's fine products. There were numerous jury instructions on the patent law. He threatened to move for a mistrial in the state court because of something our experts said about the scope of claim 26 of the 313 patent. He demanded depositions on claim scope and coverage. He served expert reports with detailed claim coverage opinions. Markman hearing in state court. Markman ordered issued. Dr. Sasso himself on the stand. Was that in the case before this court now? Yes. Yes, Your Honor. There is another case. There is another follow-on case that he has filed in the Indiana courts seeking additional damages, which is a reason under the gun factors why this is going to affect other cases. But yes, everything I've recited happened. Well, it happened. Some of it happened before we filed our complaint in the federal court. Some of it happened afterwards. But it's all of record. It's cited in our briefs. And when Dr. Sasso himself was on the stand, he testified that he thought claim 26 of the 313 patent was, quote, incredibly broad. He presented expert testimony on claim coverage comparing it to the products that he wanted to be paid on. Lengthy testimony on the patent issuance process and how they're interpreted, including specific reference to claim 26 of the 313. The only way Dr. Sasso tried to get and ultimately was able to get a judgment of $79 million on the facet agreement was by arguing the scope of the patent claims and applying them to the Medtronic devices. That's the case he pled. It's the case he tried. There's no other way he could have prevailed. That claim should have been brought and needed to have been brought in district court. And we are entitled to have it resolved on this declaratory judgment. Unless the court has further questions, I thank the court for its time. Thank you. Thank you both. The case is taken under submission. That concludes our argued cases for this morning.